**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Aaron Morris Swenson, | Case No. 23-cv-2558 (JRT/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lisa Stenseth, Warden,[1] | |
| Respondent. | |

This matter is before the Court on pro se Petitioner Aaron Swenson's Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 15.) In his amended petition, Mr. Swenson argues that his Sixth Amendment right to a speedy trial in his state criminal case "was violated by inordinate delay." (*Id.* at 5.) As relief, Mr. Swenson requests that he be "discharged from his unconstitutional confinement and restraint." (*Id*. at 15.)

Mr. Swenson's petition comes before this Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends that Mr. Swenson's amended petition be denied, and this action be dismissed with prejudice.

---

[1] Mr. Swenson initially filed a petition naming the State of Minnesota, County of Redwood as Respondent. (Doc. 1.) Subsequently, Mr. Swenson filed an amended petition naming only Lisa Stenseth as Respondent. (Doc. 15.)

## BACKGROUND

**A.     State court proceedings.**

On August 7, 2020, Mr. Swenson was arrested on probable cause for assault. (Doc. 13 at 8, 89.) Four days later, on August 11, 2020, the state of Minnesota charged Mr. Swenson with second-degree assault in violation of Minn. Stat. § 609.222, subd. 1; fifth-degree assault, in violation of Minn. Stat. § 609.224, subd. 1; and threats of violence, in violation of Minn. Stat. § 609.713, subd. 1. (*Id.* at 8, 48, 89.) Then, on October 19, 2020, the state of Minnesota amended its complaint to remove the threats of violence charge and add one count of first-degree assault in violation of Minn. Stat. § 609.221, subd. 1, and third-degree assault in violation of Minn. Stat. § 609.223, subd. 1. (Doc. 13 at 9, 48, 89.)

At a contested omnibus hearing on August 31, 2020, Mr. Swenson moved to dismiss the charges for a lack of probable cause and informed the state district court that if probable cause were found, Mr. Swenson would enter a not guilty plea and demand speedy trial. (Doc. 13-1 at 15.) The court took the matter under advisement, and on September 4, 2020, denied Mr. Swenson's motion to dismiss. (Doc. 13 at 48.) At an October 5, 2020 hearing, Mr. Swenson entered a not guilty plea and demanded a speedy trial. (Doc. 13-1 at 20.) In accordance with Mr. Swenson's speedy trial demand, the trial was scheduled to begin on November 4, 2020. (*Id.* at 26.) But on the morning of November 4, 2020, the state informed the trial court that a critical witness was experiencing COVID-19 symptoms, and therefore the trial court found good cause to continue the trial to a later date. (*Id.* at 28.)

On November 20, 2020, the Chief Justice of the Minnesota Supreme Court issued an order suspending all jury trials effective November 30, 2020, through February 1, 2021,

except for criminal trials where, upon request of the trial judge, the chief judge of the judicial district in consultation with the Chief Justice, could grant an exception. (Doc. 13 at 49.) On December 4, 2020, pursuant to the Minnesota Supreme Court Chief Justice's November 20, 2020 Order, the trial court postponed Mr. Swenson's trial again, this time until February 10, 2021. (*Id*. at 9, 49.)

On February 10, 2021, the day Mr. Swenson's jury trial was scheduled to begin, Mr. Swenson's attorney informed the trial court he was experiencing COVID-19 symptoms and the court again continued the trial, this time until February 24, 2021. (Doc. 13-1 at 47–53.) But, on February 24, 2021, after jury selection had begun but before the jury had been empaneled, the district court issued a fourth continuance because one of the state's material witnesses had been hospitalized. (*Id.* at 59–68.)

Finally, on March 10, 2021, Mr. Swenson's jury trial began. (*Id.* at 71.) The trial concluded on March 12, 2021. (Doc. 13 at 5, 10.) The jury found Mr. Swenson guilty on all counts and the trial court adjudicated a conviction of first-degree assault. (Doc. 13-1 at 311.) On April 12, 2021, the district court sentenced Mr. Swenson to an executed term of imprisonment of 161 months. (*Id.*)

Mr. Swenson filed a notice of appeal with the Minnesota Court of Appeals on July 8, 2021, and filed his brief on December 10, 2021. (Doc. 13 at 10, 51.) The Minnesota Court of Appeals issued its decision on June 20, 2022, finding that there was a presumptively prejudicial 156-day delay between Mr. Swenson's speedy trial demand and the commencement of his trial, but concluding that the district court did not violate Mr. Swenson's constitutional right to a speedy trial. (*Id.* at 96.) On July 11, 2022, Mr. Swenson

3

filed his Petition for Review ("PFR") with the Minnesota Supreme Court. (*Id.* at 100–07.) That court denied Mr. Swenson's PFR on August 23, 2022. (*Id.* at 121.) The Court of Appeals' judgment was entered on September 9, 2022. (*Id.* at 122.)

## B.     Federal habeas proceedings.

Mr. Swenson filed his federal habeas petition on August 21, 2023, naming the State of Minnesota, County of Redwood as Respondent. (Doc. 1.) On October 23, 2023, the State of Minnesota, County of Redwood filed an answer stating that neither the state nor the county is the proper Respondent to Mr. Swenson's Petition, and that Lisa Stenseth is the current warden of Minnesota Correctional Facility in Rush City, Minnesota ("MCF-Rush City"), where Mr. Swenson was incarcerated. (Doc. 11 at 1.) Nonetheless, the State of Minnesota, County of Redwood also filed a Memorandum in Opposition to Mr. Swenson's original petition, arguing that Mr. Swenson's speedy trial claim is meritless. (Doc. 12.) On November 6, 2023, Mr. Swenson filed, as a matter of course,[2] an amended petition (the operative petition here) reiterating the claims in his first petition, but naming Lisa Stenseth as Respondent. (Doc. 15 at 1, 5.) On January 4, 2024, this Court, in a text-only Order, directed attorneys for the State of Minnesota, County of Redwood to respond to the Court informing "(1) whether they also represent Lisa Stenseth and will enter an appearance on her behalf, and (2) whether they maintain their position" outlined in their prior response.

---

[2] Federal Rule of Civil Procedure 15(a)(1)(B) states "[a] party may amend its pleading once as a matter of course no later than: . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Mr. Swenson filed his amended petition within 21 days of Respondent's filing of its Answer, and therefore his amended petition is permitted under Rule 15 and is the operable pleading in this matter.

4

(Doc. 16.) Counsel for the State of Minnesota, County of Redwood responded to the Court's Order by filing a Notice of Appearance on behalf of Lisa Stenseth (Doc. 18) and informing the Court that Ms. Stenseth would rely on the position outlined in the State of Minnesota, County of Redwood's original response (Doc. 19). The Court now considers the parties' positions below.

## ANALYSIS

### I. MR. SWENSON HAS EXHAUSTED THE APPELLATE REMEDIES AVAILABLE IN THE STATE COURTS OF MINNESOTA.

To begin with, this Court must determine whether "[Mr. Swenson] has exhausted the remedies available to [him] in the courts of the State [of Minnesota.]" 28 U.S.C. § 2254(b)(1)(A). Federal courts cannot grant a writ of habeas corpus to a person in state prison unless that person first exhausts all available state court remedies for their claims. *See id*. A person in state prison must give the state courts an "opportunity to pass upon and correct alleged violations" of their federal rights. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)) (cleaned up). To satisfy the exhaustion requirement, a federal habeas petitioner must "invok[e] one complete round of the [s]tate's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Such an opportunity also requires that a petitioner "'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (quoting *Duncan*, 513 U.S. at 365) (further citations omitted). In Minnesota, a petitioner must present their claims to both the Minnesota Court of Appeals

and the Minnesota Supreme Court before a federal court may take up their petition. *See id.* Along with presenting claims for a complete round of appellate review, "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *Cox v. Burger,* 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999)) (cleaned up).

The Court finds that Mr. Swenson both proceeded through a complete round of state appellate review and fairly presented his federal speedy trial claim to the state courts. Mr. Swenson challenged his conviction on the ground that the trial court violated both his state and federal rights to a speedy trial. (Doc. 13 at 6 (citing U.S. Const. amend. VI; *Barker v. Wingo*, 407 U.S. 514 (1972)). The Minnesota Court of Appeals reviewed Mr. Swenson's claim and concluded that "the district court did not violate [Mr.] Swenson's constitutional right to a speedy trial." (*Id.* at 96.) After the Court of Appeals denied his speedy trial claim, Mr. Swenson filed a PFR with the Minnesota Supreme Court. (*Id.* at 101–07.) The Minnesota Supreme Court denied Mr. Swenson's PFR. (*Id.* at 121.) Therefore, Mr. Swenson has satisfied both the state court exhaustion[3] and fair presentation requirements.

Having determined that Mr. Swenson has met the threshold exhaustion requirement, the Court now turns to the merits of his speedy trial claim.

---

[3] A heading in Respondent's brief asserts that Mr. Swenson's "petition should be dismissed without prejudice because Petitioner has failed to exhaust his state remedies." (Doc. 12 at 2.) However, this appears to be a scrivener's error on Respondent's part, since the analysis following this heading merely sets forth general habeas standards with no exhaustion analysis. (*Id.*) Additionally, Respondent's own exhibit demonstrates that Mr. Swenson has exhausted his state remedies. (*See generally* Doc. 13.)

## II. THE STANDARD OF REVIEW UNDER 28 U.S.C. § 2254.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 governs federal court review of habeas petitions filed by people in state prison custody. Under the AEDPA:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A person in state custody seeking a writ of habeas corpus from a federal court under § 2254 "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett,* 559 U.S. 766, 773 (2010) (internal citations omitted).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

7

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court unreasonably applies clearly established federal law if the "state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* When reviewing a habeas petition, federal courts may not find that a state court came to the wrong conclusion just because the federal court "would have applied federal law differently from the state court." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006) (citing *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005)). A habeas petitioner is entitled to relief "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodhall*, 572 U.S. 415, 427 (2014) (quoting *Harrington*, 562 U.S. at 103).

  An unreasonable application of federal law is not the only path to habeas relief under § 2254. Habeas relief is also available when a state court decision is "based on an unreasonable determination of the facts in light of the evidence" before it. 28 U.S.C. § 2254(d)(2). But "when the last state court to decide a [petitioner's] federal claim explains its decision on the merits in a reasoned opinion" then a "federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers,* 584 U.S. 122, 125 (2018). The Supreme Court has held "time and again" that a federal habeas court must defer to the state court's reasonable determination of the facts. *See id.* (collecting cases). And "facts found by the state court

8

are presumed to be correct unless the applicant can rebut the presumption by clear and convincing evidence." *Rousan*, 436 F.3d at 956 (citing 28 U.S.C. § 2254(e)(1)).

### III. THE MINNESOTA COURT OF APPEALS' DECISION DID NOT CONTRADICT OR MISAPPLY CLEARLY ESTABLISHED FEDERAL LAW AND THE COURT REASONABLY REACHED ITS DECISION BASED ON THE FACTS BEFORE IT.

To determine whether the Minnesota Court of Appeals contradicted or misapplied United States Supreme Court caselaw, this Court considers what the Supreme Court has said about a person's right to a speedy trial. The United States Supreme Court has held that there are four factors to determine whether a person's speedy trial rights have been violated: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530 (footnote omitted). No single factor is dispositive, rather these factors are related and must be considered with other relevant factors. *Id*. at 533. In accordance with Supreme Court precedent, the Minnesota Court of Appeals considered these very factors when it determined that Mr. Swenson's speedy trial rights had not been violated. And on the record before it, this Court can neither find that the Minnesota Court of Appeals contradicted or misapplied a United States Supreme Court precedent, nor that the court's decision to affirm Mr. Swenson's conviction on speedy trial grounds was based on an unreasonable determination of the facts before it. This Court proceeds through each factor below.

### A. Length of delay.

The Minnesota Court of Appeals began its analysis of the *Barker* factors by determining the length of delay between Mr. Swenson's speedy trial demand and the

9

commencement of his trial. Mr. Swenson argued that there had been a 191-day delay in bringing him to trial, while the state asserted that the delay was only 156 days. Relying on Minnesota Rule of Criminal Procedure 11.09,[4] the appellate court found that there was a 156-day delay (five months and six days) between Mr. Swenson's speedy trial demand on October 5, 2020, and the beginning of his jury trial on March 10, 2021. (Doc. 13 at 64.) This delay exceeded 60 days, and so under Minnesota caselaw[5] was presumptively prejudicial to Mr. Swenson. Accordingly, the Minnesota Court of Appeals examined the other *Barker* factors as applied to Mr. Swenson's case.

However, for purposes of Mr. Swenson's habeas petition, the question is not whether there has been a violation of a state court rule, but rather there has been a violation of federal law. Under federal caselaw, "the Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Sprouts,* 282 F.3d 1037, 1042 (8th Cir. 2002). Generally, a delay of one year or more is presumptively prejudicial and induces a speedy trial analysis. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992). Mr. Swenson has provided no evidence to contradict the state appellate court's finding that his trial was delayed for 156 days, and this Court cannot find that the record fails to support such a

---

[4] "A defendant must be tried as soon as possible after entry of a plea other than guilty. On demand of any party after entry of such plea, the trial must start within 60 days unless the court finds good cause for a later trial date." Minn. R. Crim. P. 11.09(b).

[5] "We interpret [Minnesota Rule of Criminal Procedure 11.09] to mean that delays beyond the 60-day limit simply raise the presumption that a violation has occurred and require the trial court to conduct a further inquiry to determine if there has been a violation of the defendant's right to a speedy trial." *State v. Mikell*, 960 N.W.2d 230, 246 (Minn. 2021) (quoting *State v. Fiberg*, 435 N.W.2d 509, 513 (Minn. 1989)).

finding. Because 156 days is less than one year, the length of delay here does not trigger this Court's analysis of the remaining *Barker* factors. Even if this Court were to count the delay from the date of Mr. Swenson's arrest until the day his trial began, that is from August 7, 2020, to March 10, 2021—215 days—that delay is still not presumptively prejudicial for the purpose of federal habeas analysis and therefore does not trigger a full *Barker* analysis here. *See id.* Accordingly, this Court concludes that Mr. Swenson's speedy trial right was not violated and therefore his habeas claim should be denied.

But even if the length of delay were long enough to trigger a full *Barker* analysis by this Court, the Court finds that Minnesota Court of Appeals decision did not violate clearly established law nor was it based on an unreasonable determination of the facts, and would still recommend that Mr. Swenson's amended petition be denied. For the sake of completeness, this Court examines the remaining *Barker* factors below.

**B.    Reason for delay.**

In addition to the length of delay, courts must also examine the reasons for any delay of trial.

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker,* 407 U.S. at 531 (footnote omitted).

When examining the reasons for the delay of Mr. Swenson's trial, the Minnesota Court of Appeals identified "four distinct periods of delay":

11

> (1) November 4, 2020 to December 2, 2020, which resulted from the unavoidable unavailability of [the victim's] treating physician who was experiencing COVID-19 symptoms at the time of the scheduled trial; (2) December 2, 2020 to February 10, 2021, which resulted from the provisions of Order No. ADM20-8001 preventing the commencement of jury trials; (3) February 10, 2021 to February 24, 2021, which resulted from the unavailability of Swenson's attorney who was experiencing COVID-19 symptoms at the time of the scheduled trial; and (4) February 24, 2020 to March 10, 202[1], which resulted from the unavoidable unavailability of [a material witness for the state] who was hospitalized at the time of the scheduled trial.

(Doc. 13 at 94.) Based on the criteria outlined in *Barker*, the appellate court concluded that the first, second, and third delays—delays which the appellate court determined were caused by the COVID-19 pandemic—could not be attributed to the state. As for the fourth delay, the court determined that there was good cause for the delay because of the unavailability of a critical witness. Mr. Swenson has provided no evidence to contradict the appellate court's findings and no evidence that any of the delays resulted from the state's deliberate effort to hinder his defense. Accordingly, this Court cannot find that the record fails to support the Minnesota Appeals Court's findings. Thus, this Court concludes that the Minnesota appellate court did not violate clearly established law or base its decision on an unreasonable determination of the facts before it.

**C.     Mr. Swenson's assertion of his speedy trial right.**

The Minnesota Court of Appeals next considered Mr. Swenson's assertion of his speedy trial right. The appellate court found that "[Mr.] Swenson's attorney noted his speedy trial demand on the record at the hearings on October 5, 2020; October 23, 2020; October 31, 2020; and November 12, 2020," and concluded that this factor weighed in Mr. Swenson's favor. On the record before it, this Court concludes that the Minnesota Court of

Appeals did not violate clearly established law or base its decision on an unreasonable determination of the facts when it found that Mr. Swenson's assertion of his speedy trial right weighed in his favor. Indeed, this Court also finds that this factor weighs in Mr. Swenson's favor.

**D.     Prejudice to Mr. Swenson.**

The fourth *Barker* factor, prejudice, "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The United States Supreme Court has identified

> three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Id.* (footnote omitted). The Minnesota Court of Appeals examined these very factors to determine whether Mr. Swenson's interests had been prejudiced by the 156-delay in bringing him to trial.

In his state court appeal, Mr. Swenson argued that he was prejudiced by the delay because he faced increased exposure to COVID-19 and anxiety about contracting the disease while in custody before trial. But the appellate court found Mr. Swenson's argument unpersuasive and concluded that the prejudice factor weighed "strongly" in the state's favor. (Doc. 13 at 96.) Citing Minnesota Supreme Court precedent,[6] the appellate

---

[6] "If a defendant is already in custody for another offense, as Taylor was here, the first two interests are not implicated." *State v. Taylor*, 869 N.W. 2d 1, 20 (Minn. 2015) (citing *State v. Windish*, 590 N.W.2d 311, 318 (Minn. 1999)).

court reasoned that because Mr. Swenson's "incarceration was not solely related to this case . . . [and he] was also held in custody on a separate and unrelated matter,"[7] the first two interests listed in *Barker* were not relevant. (*Id.*) On the record before it, this Court cannot find that the Minnesota Court of Appeals contradicted or misapplied United States Supreme Court precedent when it found that the first and second factors did not apply to Mr. Swenson. Not only did the appellate court reasonably rely on Minnesota Supreme Court precedent, but the Eighth Circuit came to a similar conclusion when examining the *Barker* prejudice factor in *United States v. Page*. The *Page* court concluded that pretrial delay did "not appear" to result in "any actual prejudice to appellant" when "[a]ppellant was already in the Mississippi penitentiary on a state burglary charge at the time the federal indictment was returned, and any augmentation of his pretrial incarceration was minimal if not nonexistent." 544 F.2d 982, 986 (8th Cir. 1976) (footnote omitted).

The appellate court did not examine the third interest—whether the delay impaired Mr. Swenson's defense—because, as the court noted "[Mr.] Swenson [made] no argument regarding the third interest." (Doc. 13 at 96.) Here too, Mr. Swenson makes no argument for prejudice in his amended petition beyond his assertion that "by the Court of Appeals review of the Prejudice factor, after finding the delay was [']presumptively prejudicial['] it in effect gave the State a [']twice-deferential['] advantage, which is not part of the 'BARKER' analysis." (Doc. 15 at 5.) Mr. Swenson has provided no evidence that the delay

---

[7] Mr. Swenson was also in custody on a separate pending criminal case (the case number is not cited in the appellate briefing or the Appeals Court's Order) and had a Minnesota Department of Corrections ("DOC") hold. (Doc. 13 at 34, 71.)

14

impaired his defense. Without evidence of impairment to his defense, this Court finds, based on the record before it, that the appellate court neither violated clearly established law nor based its decision on an unreasonable determination of the facts when it found that pretrial delay did not prejudice Mr. Swenson.

Based on its examination of the *Barker* factors and the record before it, this Court finds that Mr. Swenson's state appellate court decision neither violated clearly established law nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The Court therefore recommends that Mr. Swenson's Petition be denied and dismissed with prejudice. *See Riddle v. Minnesota*, No. 20-cv-1262 (ECT/ECW), 2021 WL 799490, at *11–12 (D. Minn. Jan. 8, 2021) (recommending dismissal with prejudice of a petitioner's 28 U.S.C. § 2254 petition), *R. & R. adopted*, 2021 WL 795164 (D. Minn. Mar. 2, 2021).

## IV.   CERTIFICATE OF APPEALABILITY.

A § 2254 habeas petitioner cannot appeal an adverse ruling on their petition unless they are granted a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A court a cannot grant a petitioner a COA unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing here, Mr. Swenson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court finds it unlikely that any other court, including the Eighth Circuit, would come to a different conclusion about Mr. Swenson's claim than the one this Court recommends. Mr. Swenson has not made a

substantial showing in his Petition that his federal right to a speedy trial has been denied. Accordingly, the Court recommends that a COA not be issued here.

## RECOMMENDATION

Accordingly, based on all the files, records, and proceedings above, **IT IS RECOMMENDED** that:

1. Petitioner Aaron Morris Swenson's Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 15) be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. No certificate of appealability be issued.

Date: March 15, 2024

*s/Douglas L. Micko*
DOUGLAS L. MICKO
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).